10-2311-cv
Fait v. Regions Financing Trust, et al.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**
_____

August Term, 2010

(Argued: May 9, 2011                    Decided: August 23, 2011)

Docket No. 10-2311-cv
_____

ALFRED FAIT, Individually and on behalf of all others similarly situated,

*Plaintiff*,

HOWARD M. RENSIN, TRUSTEE FOR THE HOWARD M. RENSIN IRA,

*Plaintiff-Appellant*,

v.

REGIONS FINANCIAL CORPORATION, REGIONS FINANCING TRUST III, C. DOWD RITTER, SAMUEL W. BARTHOLOMEW, JR., GEORGE W. BRYAN, DAVID J. COOPER, EARNEST W. DEAVENPORT, JR., DON DEFOSSET, JAMES R. MALONE, SUSAN W. MATLOCK, CHARLES D. MCCRARY, CLAUDE B. NIELSEN, JORGE M. PEREZ, LEE J. STYSLINGER, III, SPENCE L. WILSON, JOHN R. ROBERTS, ERNST & YOUNG LLP, UBS SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, WACHOVIA CAPITAL MARKETS, LLC, MORGAN STANLEY & CO. INCORPORATED, MORGAN KEEGAN & COMPANY, INC.,

*Defendants-Appellees*.[*]

Before: POOLER, B.D. PARKER, and LOHIER, *Circuit Judges*.
_____

Appeal from a judgment of the United States District Court for the Southern District of New York (Kaplan, *J.*) granting defendants' motion to dismiss complaint alleging violations of sections 11 and 12 of the Securities Act of 1933.

AFFIRMED.
_____

---

[*] The Clerk of Court is directed to amend the official caption to read as shown above.

ERIC ALAN ISAACSON, Robbins Geller Rudman & Dowd LLP, San Diego, CA (Darren J. Robbins, Andrew J. Brown, Amanda M. Frame, Robbins Geller Rudman & Dowd LLP, San Diego, CA; Samuel H. Rudman, David A Rosenfeld, Robbins Geller Rudman & Dowd LLP, Melville, NY, *on the brief*), *for Plaintiff-Appellant.*

DAVID B. TULCHIN (William J. Snipes, *on the brief*), Sullivan & Cromwell LLP, New York, NY, *for Regions and Individual Defendants-Appellees.*

KENNETH S. GELLER, Mayer Brown LLP, Washington, DC (Mauricio A. España, Mayer Brown LLP, New York, NY; Stanley J. Parzon, James C. Schroeder, John J. Tharp, Jr., Mayer Brown LLP, Chicago, IL, *on the brief*), *for Defendant-Appellee Ernst & Young LLP.*

SCOTT A. EDELMAN (Douglas W. Henkin, *on the brief*), Milbank, Tweed, Hadley & McCloy LLP, New York, NY, *for Underwriter Defendants-Appellees.*

BARRINGTON D. PARKER, *Circuit Judge*:

This case requires us to consider whether certain statements concerning goodwill and loan loss reserves in a registration statement of Defendant-Appellee Regions Financial Corporation give rise to liability under sections 11 and 12 of the Securities Act of 1933. The United States District Court for the Southern District of New York (Kaplan, *J.*) concluded that they do not and dismissed the complaint. *See* Fed. R. Civ. P. 12(b)(6). Plaintiff-Appellant Howard M. Rensin appeals. We conclude that the statements in question were opinions, which were not alleged to have falsely represented the speakers' beliefs at the time they were made. Therefore, we affirm.

**BACKGROUND**

The following facts, which we assume to be true, are drawn from the amended complaint and documents incorporated by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 708 (2d Cir. 2011). In November 2006, Regions Financial Corporation ("Regions"), a regional bank holding company operating in the South, Midwest, and Texas, acquired another bank holding company, AmSouth Bancorporation ("AmSouth"), in a stock transaction valued at approximately $10 billion. The proxy statement issued in connection with the acquisition disclosed that following the acquisition, Regions would record AmSouth's assets and liabilities at fair value, and that any excess of purchase price over net fair value would be recorded as goodwill.

In February 2008, Regions filed its 2007 Form 10-K wherein it reported $11.5 billion in goodwill, of which $6.6 billion was attributed to the AmSouth acquisition. The 10-K also reported that Regions had increased its loan loss reserves from $142.4 million in the previous year to $555 million. In explaining this increase, the 10-K stated:

> Two primary factors led to the increase. Most notably, 2006 included just two months of provision for loan losses added to the portfolio as a result of the November 2006 merger with AmSouth, while the provision recorded in 2007 reflected the results of the newly merged Regions for the full year. Additionally, the provision rose due to an increase in management's estimate of inherent losses in its residential homebuilder portfolio, as well as generally weaker conditions in the broader economy.

J.A. 1026 (Am. Compl. ¶ 10).

In April 2008 Regions Financing Trust III (the "Trust"), a Delaware statutory trust and wholly owned subsidiary of Regions, issued 13.8 million shares of Trust Preferred Securities—"hybrid" securities with characteristics of equity and debt—(the "Securities") in a

3

registered public offering (the "2008 Offering"). The Registration Statement and Prospectus for the 2008 Offering (the "Offering Documents") incorporated by reference Regions' 2007 Form 10-K and certain additional SEC filings.

In SEC filings reporting its financial results for the first three quarters of the 2008 fiscal year, Regions continued to report goodwill of $11.5 billion and moderate increases to its allowance for credit losses. However, in its fourth quarter results released in January 2009, Regions reported a $5.6 billion net loss, "largely driven by a $6 billion non-cash charge for impairment of goodwill," and doubled its loan loss provision to $1.15 billion as compared to a year earlier. In the months following these disclosures, the price of the Securities and Regions' stock fell, and credit rating agencies downgraded the company's debt.

Following the 2006 AmSouth merger, serious problems emerged in the housing and residential mortgage markets. Beginning in late 2006, several large mortgage lenders, particularly those making predominantly subprime loans, either filed for bankruptcy protection or significantly scaled back their operations. By 2008, the mortgage market problems had spread to larger, more longstanding banks and lenders. This period was also characterized by rising rates of delinquency and foreclosure on home mortgage loans, and slowed housing sales.

Following the decline in Regions' stock price, Alfred Fait, who purportedly acquired Trust Preferred Securities, filed a putative class-action complaint against Regions, the Trust, and other defendants. Pursuant to a district court order, Rensin was later appointed Lead Plaintiff and filed an amended complaint on November 2, 2009. The amended complaint also named as defendants individual members of the board of directors of Regions who signed the Registration Statement and Regions' 2007 Form 10-K. Additional defendants included Ernst & Young

("E&Y"), which served as Regions' independent public accountant and certified financial statements in Regions' 2007 Form 10-K, as well as the underwriters of the 2008 Offering.

The complaint alleges, in essence, that despite adverse trends in the mortgage and housing markets, particularly in areas where AmSouth's mortgage loans were concentrated, Regions failed to write down "goodwill" and to sufficiently increase "loan loss reserves."[1] As a consequence of these failures, the complaint contends, the Offering Documents (either explicitly or by reference to other filings) contained "negligently false and misleading" statements concerning goodwill and loan loss reserves. In particular, the complaint asserts that Regions overstated goodwill and falsely stated that it was not impaired, and "vastly underestimated" Regions' loan loss reserves and failed to disclose that they were inadequate.

Relying on these allegations, the complaint further contends that the Offering Documents incorporated false and misleading certifications by management that Regions' financial statements complied with the Sarbanes-Oxley Act ("SOX") and were prepared in accordance with GAAP. It also alleges that E&Y falsely certified that Regions' financial results were presented in accordance with GAAP, that E&Y's audits complied with generally accepted accounting standards ("GAAS"), and that Regions maintained effective internal controls. The complaint alleges that these misleading statements and omissions violated sections 11(a),

[1] As detailed further *infra*, according to Financial Accounting Standards Board ("FASB") Statement of Financial Accounting Standards ("SFAS") No. 141 ¶ 34, following an acquisition, goodwill is measured as any excess of the purchase price over the value of the assets acquired and liabilities assumed. Under SFAS No. 142, goodwill is an intangible asset that is recorded similarly to any other asset, and any subsequent decline in its value is recorded as a loss. Loan loss reserves refer to the to the amount set aside to cover expected defaults or losses on loans. Under generally accepted accounting principles ("GAAP"), *see Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 160 (2d Cir. 2000) (defining GAAP), depository institutions and their holding companies are required to establish and maintain adequate allowances for loan losses.

5

12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act" or "1933 Act"). *See* 15 U.S.C. §§ 77k(a), 77*l*(a)(2), 77o.

Defendants moved to dismiss the complaint on the ground that the challenged statements regarding goodwill and the adequacy of loan loss reserves were matters of opinion, which were not actionable because the complaint failed to allege that those opinions were not truly held at the time they were made. Concluding that the challenged statements were ones of judgment and opinion, rather than fact, Judge Kaplan granted defendants' motions and dismissed the complaint. *Fait v. Regions Fin. Corp.*, 712 F. Supp. 2d 117, 120-25 (S.D.N.Y. 2010). With respect to goodwill, Judge Kaplan observed that "the goodwill reflected in [Regions'] 2007 10-K was the excess of the acquisition price, an objective fact, over the fair value of AmSouth's assets at the time of the acquisition. . . . [, which] was not a matter of objective fact." *Id.* at 122. Instead, "the goodwill stated on [Regions'] balance sheet reflected judgments as to values that were not objectively determinable." *Id.* at 123. Thus, "[t]he truth or falsity of that statement . . . was a matter of opinion." *Id.* Similarly, Judge Kaplan observed that loan loss reserves "reflect management's opinion as to the likelihood of future loan losses and their magnitude." *Id.* at 124. Thus, "[w]hether Regions had adequate reserves for its predicted loan losses is not a matter of objective fact," but instead, "[t]he reserves . . . were statements of opinion by defendants as to the portion of the stated value of Regions' loans that would prove to be uncollectable." *Id.* For these reasons, Judge Kaplan held that the statements in question were not actionable because the complaint failed to allege that defendants did not honestly hold those opinions at the time they were expressed. This appeal followed.

**DISCUSSION**

We review a district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Claims under sections 11 and 12(a)(2) of the Securities Act have "roughly parallel elements." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010). Section 11 imposes liability on issuers and other signatories of a registration statement that "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Section 12(a)(2) imposes liability under similar circumstances with respect to, *inter alia*, prospectuses. *Id.* § 77l(a)(2); *see also Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 141 (2d Cir. 2010) ("To prevail on a § 11 or § 12(a)(2) claim, a plaintiff must show that the relevant communication either misstated or omitted a material fact."). While "[i]ssuers are subject to 'virtually absolute' liability under section 11, . . . the remaining potential defendants under sections 11 and 12(a)(2) may be held liable for mere negligence." *In re Morgan Stanley*, 592 F.3d at 359 (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983)). As the parties recognize, in contrast to claims brought pursuant to section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"

7

or "1934 Act"), 15 U.S.C. § 78*a et seq.*, claims under sections 11 and 12 do not require allegations of scienter, reliance, or loss causation.[2]

Although sections 11 and 12 refer to misrepresentations and omissions of material *fact*, matters of belief and opinion are not beyond the purview of these provisions.  However, when a plaintiff asserts a claim under section 11 or 12 based upon a belief or opinion alleged to have been communicated by a defendant, liability lies only to the extent that the statement was both objectively false and disbelieved by the defendant at the time it was expressed.  *See Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 1095-96 (1991).

**I.      Goodwill**

Under SFAS No. 141, goodwill is "an asset representing the future economic benefits arising from other assets acquired in a business combination that are not individually identified and separately recognized."  J.A. 940 (Business Combinations, SFAS No. 141 ¶ 3j (Fin. Accounting Standards Bd. 2007)).  When an acquisition occurs, GAAP requires that any excess of the purchase price over the fair value of the assets acquired and the liabilities assumed be reported as goodwill or "excess purchase price."  GAAP also requires that goodwill be tested for impairment annually, or "more frequently if events or changes in circumstances indicate that the asset might be impaired."

---

[2] Section 15 of the 1933 Act creates liability for an individual or entity that "controls any person liable" under section 11 or 12.  15 U.S.C. § 77o; *accord In re Morgan Stanley*, 592 F.3d at 358.  Thus, to succeed on a claim under section 15, a plaintiff must demonstrate primary liability under section 11 or 12.  *See In re Morgan Stanley*, 592 F.3d at 358.  Since we conclude that the district court properly dismissed the section 11 and 12 claims, we also find no error in the court's dismissal of plaintiffs' section 15 claims.  *See id.* at 358, 366; *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 206-07 (2d Cir. 2009).

J.A. 538 (Goodwill and Other Intangible Assets, SFAS No. 142 ¶ 17 (Fin. Accounting Standards Bd. 2001)).

After the AmSouth acquisition, Regions recorded goodwill of $6.2 billion in connection with the acquisition. Regions then tested for impairment at the end of 2007 and apparently found none. In fact, in its 2007 Form 10-K, Regions increased the amount of goodwill attributed to the AmSouth acquisition to approximately $6.6 billion.

Rensin contends that "[d]espite clear indications that impairment testing was necessary, Regions failed to conduct impairment tests in the first three quarters of [fiscal year] 2007 and failed to properly record impairment charges during th[at] period." J.A. 1085 (Am. Compl. ¶ 155). Moreover, he alleges, when Regions did conduct impairment testing at the end of 2007, it should have concluded that goodwill was impaired due to "the deterioration of the banking sector" by that time. *Id.* (Am. Compl. ¶ 158). Thus, he asserts, "the incorporation of the Company's 2007 Form 10-K in the 2008 Offering led to a materially false and misleading Registration Statement." *Id.*

As Judge Kaplan correctly recognized, plaintiff's allegations regarding goodwill do not involve misstatements or omissions of material fact, but rather a misstatement regarding Regions' opinion. Estimates of goodwill depend on management's determination of the "fair value" of the assets acquired and liabilities assumed, which are not matters of objective fact. *See, e.g.*, *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 619 (2d Cir. 2006) ("There is no universally infallible index of fair market value. There may be a range of prices with reasonable claims to being fair market value." (quoting *Rhodes v. Amoco Oil Co.*, 143 F.3d 1369, 1372 (10th Cir. 1998))). Plaintiff does not point to any objective standard such as market price that he claims Regions should have but

failed to use in determining the value of AmSouth's assets.[3] *See* J.A. 539 (SFAS No. 142 ¶ 23) ("Quoted market prices in active markets are the best evidence of fair value and shall be used as the basis for the measurement, if available."). Absent such a standard, an estimate of the fair value of those assets will vary depending on the particular methodology and assumptions used. *See* J.A. 540 (SFAS No. 142 ¶ 24) ("If quoted market prices are not available, the estimate of fair value shall be based on the best information available, including prices for similar assets and liabilities and the results of using other valuation techniques."). In other words, the statements regarding goodwill at issue here are subjective ones rather than "objective factual matters." *See I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991) ("The federal securities laws require . . . the disclosure of material objective factual matters." (quoting *Data Probe Acquisition Corp. v. Datatab, Inc.*, 722 F.2d 1, 5-6 (2d Cir. 1983))). The question, then, is when, if at all, such statements give rise to liability under sections 11 or 12.

*Virginia Bankshares* is instructive on this point. In that case minority shareholders sued bank directors under section 14(a) of the 1934 Act and SEC Rule 14a-9 following a "freeze-out" merger.[4] The shareholders alleged that in soliciting proxies, the directors falsely stated that

---

[3] The complaint also does not allege that the statements about goodwill were stated as guarantees. *Cf. In re IBM Corp. Sec. Litig.,* 163 F.3d 102, 107 (2d Cir. 1998) ("Statements regarding projections of future performance may be actionable under Section 10(b) or Rule 10b-5 if they are worded as guarantees . . . ."). To the contrary, Regions' 2007 10-K states: "Adverse changes in the economic environment, declining operations of the business unit, or other factors could result in a decline in implied fair value of excess purchase price." J.A. 366.

[4] Although *Virginia Bankshares* involved claims under section 14(a), the Court addressed whether statements of opinions or beliefs could be considered factual statements under the securities laws, and we have applied the Court's approach in *Virginia Bankshares* to claims under the 1933 Act. *See, e.g.*, *In re IBM*, 163 F.3d at 106-11; *see also In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 372 n.14 (3d Cir. 1993) ("Although the Court in *Virginia Bankshares* addressed § 14(a) of the 1934 Act, which concerns proxy statements, it is

shareholders were offered a "high" value and a "fair" price for their stock. 501 U.S. at 1088. The shareholders further contended that at the time they made those statements, the directors did not believe them but made them for ulterior reasons. Consequently, the Court was called on to consider "whether statements of reasons, opinions, or beliefs are statements with respect to material facts so as to fall within the strictures of [Rule 14a-9]." *Id.* at 1091 (quotation marks and alterations omitted). The Court recognized that the statements of reasons and belief at issue, although not statements of facts in and of themselves, "are factual in two senses: as statements that the directors do act for the reasons given or hold the belief stated and as statements about the subject matter of the reason or belief expressed." *Id.* at 1092.

In light of these observations, the Court held that such statements may be actionable if they misstate the opinions or belief held, or, in the case of statements of reasons, the actual motivation for the speaker's actions, *and* are false or misleading with respect to the underlying subject matter they address. *Id.* at 1091-96; *see also id.* at 1108-09 (Scalia, J., concurring in part and concurring in the judgment) ("As I understand the Court's opinion, the statement 'In the opinion of the Directors, this is a high value for the shares' would produce liability if in fact it was not a high value and the directors knew that. It would not produce liability if in fact it was not a high value but the directors honestly believed otherwise."); *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009) ("[O]pinions . . . can give rise to a claim under section 11 only if the complaint alleges . . . that the statements were both objectively and subjectively false or misleading." (citing *Virginia Bankshares*)); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1131 (2d Cir. 1994) ("A statement of reasons, opinion or belief . . . can be actionable under the securities laws if the speaker knows the

instructive . . . in addressing . . . claims brought under §§ 11 and 12(2) of the 1933 Act . . . .").

11

statement to be false." (citing *Virginia Bankshares*)).  This approach makes logical sense.  Requiring plaintiffs to allege a speaker's disbelief in, and the falsity of, the opinions or beliefs expressed ensures that their allegations concern the factual components of those statements.

Cases from our Circuit apply these principles as well.  For example, in *Friedman v. Mohasco Corporation*, which we decided prior to *Virginia Bankshares*, we held that a company's representation that securities it issued in connection with a merger would attain a certain market value, which they did not ultimately attain, was not actionable under the 1933 or 1934 Act because the company's projections were stated as opinions rather than guarantees.  929 F.2d 77, 78-79 (2d Cir. 1991).  In *In re Time Warner Inc. Securities Litigation*, we determined that "expressions of opinion and . . . projections" in a company's statements about its future prospects were not actionable because "the complaint contain[ed] no allegations to support the inference that the defendants either did not have the[] favorable opinions on future prospects when they made the statements or that the favorable opinions were without a basis in fact."  9 F.3d 259, 266 (2d Cir. 1993).  Subsequently, in *In re IBM Securities Litigation*, we held that a company's alleged statements that were "expressions of optimism" and "projections of future performance" were not actionable under the 1933 or 1934 Acts.  163 F.3d at 107, 110-11.

Applying these principles here, we conclude that Rensin has not adequately alleged actionable misstatements or omissions regarding goodwill.  Plaintiff relies mainly on allegations about adverse market conditions to support the contention that defendants should have reached different conclusions about the amount of and the need to test for goodwill.  The complaint does not, however, plausibly allege that defendants did not believe the statements regarding goodwill at

12

the time they made them.[5]  Under *Virginia Bankshares* and our related cases, such an omission is fatal to plaintiff's section 11 and 12 claims.

**II.    Loan Losses Reserves**

Rensin alleges that GAAP required Regions to maintain adequate reserves for: (1) estimated credit losses for loans specifically identified as being impaired; (2) estimated credit losses for loans or groups of loans with specific characteristics that indicate probable losses; and (3) estimated credit losses inherent in the remainder of the portfolio based on current economic events and circumstances.  According to SFAS No. 114, "[a] loan is impaired when, based on current information and events, it is probable that a creditor will be unable to collect all amounts due according to the contractual terms of the loan agreement."  J.A. 1089 (Am. Compl. ¶ 169 (quoting Accounting by Creditors for Impairment of a Loan, SFAS No. 114 ¶ 8 (Fin. Accounting Standards Bd. 1993))).

The complaint acknowledges that Regions increased its allowance for credit losses during the relevant period and reported that these increases were attributable in part to adverse trends in the mortgage and housing markets.  Nonetheless, plaintiff contends that "Regions' loan loss reserves from the first quarter of 2007 through the first three quarters of 2008 were materially inadequate and did not reflect the high risk of loss inherent in its mortgage loan portfolio."  J.A. 1088 (Am. Compl. ¶ 168).

---

[5] Contrary to plaintiff's concern, the standard applied here does not amount to a requirement of scienter.  We do not view a requirement that a plaintiff plausibly allege that defendant misstated his truly held belief and an allegation that defendant did so with fraudulent intent as one and the same.

13

These allegations suffer from the same deficiencies as those regarding goodwill. As Judge Kaplan recognized, determining the adequacy of loan loss reserves is not a matter of objective fact. Instead, loan loss reserves reflect management's opinion or judgment about what, if any, portion of amounts due on the loans ultimately might not be collectible. *See* J.A. 1025-26 (Am. Compl. ¶ 10 ("The provision for loan losses is used to maintain the allowance for loan losses at a level that, *in management's judgment*, is adequate to cover losses inherent in the loan portfolio as of the balance sheet date." (emphasis added) (quoting Regions 2007 Form 10-K))). Such a determination is inherently subjective, and like goodwill, estimates will vary depending on a variety of predictable and unpredictable circumstances. *See United States v. Morris*, 80 F.3d 1151, 1164 (7th Cir. 1996) ("[T]he estimation of probable losses in a large loan portfolio . . . is more an art than a science, and . . . any two analyses of probable losses in the same portfolio are unlikely to exactly correspond . . . ."); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 281 (3d Cir. 1992) ("There appears to be no single method of evaluating and setting loan loss reserves, perhaps because no method has proven foolproof. Some banks set their loan loss reserves by comparing the size of the reserves to that of the loan portfolio. Others also analyze the quality of their loans in varying degrees of detail and according to a range of different criteria and classifications." (citations omitted)).

14

Plaintiff does not point to an objective standard for setting loan loss reserves.[6] Thus, in order for the alleged statements regarding the adequacy of loan loss reserves to give rise to liability under sections 11 and 12, plaintiff must allege that defendant's opinions were both false and not honestly believed when they were made. *Virginia Bankshares*, 501 U.S. at 1095. Because the complaint does not plausibly allege subjective falsity, it fails to state a claim.

## III. SOX, GAAP, and GAAS Allegations

Plaintiff's remaining allegations related to SOX, GAAP, and GAAS are essentially derivative of his primary allegations regarding goodwill and loan loss reserves. In particular, relying on the allegations that defendants failed to account for adverse market trends in estimating and determining whether to test for impairment of goodwill and in setting loan loss reserves, Plaintiff alleges that defendants' statements regarding these matters, and by extension, their statements that Regions' financial reporting was performed in accordance with applicable accounting standards and regulations, were false. However, consistent with our conclusion that the complaint does not adequately allege that defendants misstated or omitted material facts regarding goodwill or loan loss reserves, these allegations also fail to state a claim.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

---

[6] Nor does he allege that Regions' statements regarding its loan reserves were framed as guarantees. *See* note 2 *supra*. In fact, the 2007 10-K stated: "We believe that our allowance for credit losses is adequate. However, if our assumptions or judgments are wrong, our allowance for credit losses may not be sufficient to cover our actual credit losses. We may have to increase our allowance in the future . . . to adjust for changing conditions and assumptions, or as a result of any deterioration in the quality of our loan portfolio." J.A. 351.